**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| GREG GUTHRIE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:16-cv-473-MGG |
| | ) |
| LORI ANN HOCHSTETLER, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**OPINION AND ORDER**

On March 14, 2018, Plaintiff, Greg Guthrie, filed his Motion to Exclude Expert Testimony asking the Court to exclude the testimony of Defendant Lori Ann Hochstetler's retained expert, Ernest P. Chiodo, M.D., J.D., M.P.H., M.S., M.B.A., C.I.H., under Federal Rules of Evidence 403 and 702 as well as the principles set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Hochstetler filed her response in opposition to Defendants' motion on March 28, 2018. Guthrie's motion became ripe on April 4, 2018, when he filed a reply brief. Jurisdiction in this Court is proper under 28 U.S.C. § 1332(a)(1), as Guthrie and Hochstetler are citizens of different states and the amount in controversy exceeds $75,000.000, exclusive of interest and costs. The Court issues the following opinion pursuant to the consent of the parties and 28 U.S.C. § 636(c).

## I.  RELEVANT BACKGROUND

On August 30, 2014, the parties were involved in a car collision in which Hochstetler rear-ended Guthrie's car. Both cars had been stopped on a highway off-ramp. Guthrie began moving forward as traffic allowed but then had to stop abruptly when the car in front of him stopped. Hochstetler was not able to stop before colliding with Guthrie's car. Guthrie's bumper sustained minor damage and Guthrie reported no injuries at the scene. However, a little more than two weeks after the collision, Guthrie visited a doctor and was diagnosed with cervical strain requiring chiropractic treatment and physical therapy. Later, a neurosurgeon diagnosed him with a herniated disc in his neck that ultimately led to fusion surgery about fifteen months after the collision.

On March 22, 2016, Guthrie initiated this civil action against Hochstetler alleging that her negligence resulted in the car collision that caused the herniated disc in his neck. Accordingly, Guthrie seeks judgment against Hochstetler to compensate him for all his losses.

On September 20, 2016, this Court issued its Rule 16(b) Preliminary Pretrial Scheduling Order establishing deadlines for discovery, including the disclosure of retained experts, and for "[a]ny evidentiary objections to another party's expert witness, whether directed to the witness's qualifications or to the foundation for the anticipated testimony," among other things. [DE 8 at 2]. Specifically, the Court set July 1, 2017, as the deadline for evidentiary objections. The Court explicitly informed the parties that

"[f]ailure to file such objections is waiver of any objection to opinion testimony outlined in the statement filed by the witness's proponent." [*Id.*].

On July 1, 2017, Dr. Chiodo, Hochstetler's retained expert, sent his report in the form of a letter to her attorney. Dr. Chiodo was retained as an expert in the field of biomedical[1] engineering. He is a medical doctor, a lawyer, and has advanced degrees in public health, biomedical engineering, threat response management, and occupational and environmental health sciences with a specialization in industrial toxicology. Dr. Chiodo maintains patients as part of his medical practice, represents plaintiffs in toxic tort cases, and works as a forensic expert witness typically for the defense in cases involving low-speed collisions.

Based upon a review of Guthrie's medical records, a photo of the bumper of Guthrie's car after the collision, Guthrie's responses to written discovery requests, transcripts from depositions of three of Guthrie's treating physicians, and the police crash report as well as peer reviewed medical and scientific literature and the Court's own *Reference Manual on Scientific Evidence, 3rd Edition*, Dr. Chiodo opined in his report that there is no causal connection between the August 2014 and Guthrie's ill health. Dr. Chiodo stated also that Guthrie suffered no injury or illness due to the collision

---

[1] Throughout their briefs, the parties refer to Dr. Chiodo as a "biomechanical" and a "biomedical" engineer without clear explanation of any distinction. The Court will use the term "biomedical engineer" throughout this order based on Dr. Chiodo's degree in biomedical engineering reflected on his curriculum vitae.

therefore no treatment, rehabilitation, or accommodation was required due to the collision. [DE 31-1 at 13].

On September 22, 2017, Guthrie deposed Dr. Chiodo. In the parties' proposed pretrial order filed on October 11, 2017, Guthrie informed the Court that he "anticipate[d] filing a Daubert Motion challenging Dr. Earnest [sic] Chiodo from testifying once the deposition testimony is transcribed." [DE 19 at 1]. For reasons unrelated to Guthrie's anticipated *Daubert* motion, the trial was rescheduled for June 26, 2018, through an order dated November 28, 2017. [DE 28]. After the Court denied Hochstetler's motion to exclude testimony from two of Guthrie's treating physicians for alleged discovery shortcomings through an order dated February 2, 2018 [DE 29], Guthrie filed the instant *Daubert* motion on March 14, 2018.

Through his motion, Guthrie challenges the reliability of Dr. Chiodo's opinions, as well as their helpfulness to the jury, citing Fed. R. Evid. 702. Alternatively, Guthrie invokes Fed. R. Evid. 403 and contends that any relevance of Dr. Chiodo's opinions to this case is substantially outweighed by the danger of unfair prejudice and the risk of misleading the jury. Hochstetler contests each of Guthrie's arguments.

**II.    ANALYSIS**

    **A.    Waiver of Evidentiary Objection**

As a preliminary matter, Guthrie's instant *Daubert* motion was not filed before the Court's deadline for evidentiary objections of July 1, 2017. Additionally, Guthrie did not file a motion to extend the evidentiary objection deadline before or after the

deadline expired. Instead, Guthrie simply reported an anticipated *Daubert* motion more than three months after the deadline passed in a proposed pretrial order [DE 19] and then filed the motion without leave of court five months later. Guthrie has offered no explanation for the untimely motion despite being served the Court's Preliminary Pretrial Scheduling Order [DE 8] in which the deadline was set and the parties' proposed pretrial order, which included a footnote explicitly stating that "[t]he deadline for filing of all potentially dispositive motions, including *Daubert* motions was July 1, 2017." [DE 19 at 1 n.2].

Arguably, Guthrie may have waived his objection to Dr. Chiodo by failing to comply with the Court's deadline. However, the Court recognizes that it would have been difficult for Guthrie to file a *Daubert* motion when Dr. Chiodo's report was sent to Hochstetler's attorney on the same date as the Court's deadline for evidentiary objections. Nevertheless, the deadline passed. Under Fed. R. Civ. P. 6(b)(1)(B), the court may extend deadlines for good cause "on motion made after the time has expired if the party failed to act because of excusable neglect." While the Court may have willingly extended the deadline for evidentiary objections given the timing of Dr. Chiodo's report if requested shortly after deadline passed or even shortly after Dr. Chiodo's deposition, Guthrie never asked. Instead, Guthrie waited eight months after the deadline passed and filed the motion without asking the Court's permission. Moreover, Guthrie has offered no explanation for why he tarried more than five months after Dr. Chiodo's deposition before filing the instant motion. Thus, Guthrie has failed to demonstrate the

5

excusable neglect necessary to justify an extension of the evidentiary objection deadline now. Accordingly, the Court would be within its authority to deny Guthrie's instant motion as untimely. Yet Guthrie's motion also fails on the merits as discussed below.

**B.     Legal Standard under *Daubert***

Federal Rule of Evidence 702 governs the admission of expert testimony and states that

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)   the testimony is based on sufficient facts or data;
> (c)   the testimony is the product of reliable principles and methods; and
> (d)   the expert has reliably applied the principles and methods to the facts of the case.

As a threshold matter, courts must examine whether 1) the expert will "testify based on *valid* scientific, technical, or specialized knowledge, *i.e.*, whether the expert's testimony is reliable," and 2) whether that testimony will assist the trier of fact in understanding or determining a fact in issue. *Ruppel v. Kucanin*, No. 3:08 CV 591, 2011 WL 2470621, at *2 (N.D. Ind. June 20, 2011) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993)); *see also Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).

Accordingly, courts play a critical "gatekeeper" role ensuring that any expert testimony or evidence admitted is not only relevant but reliable. *Mihailovich v. Laatsch*, 359 F.3d 892, 918 (7th Cir. 2004). To fulfill the gatekeeper role, courts must determine

6

whether an expert is qualified in the relevant field and whether the methodology underlying the expert's conclusion is reliable. *See Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004). The judge retains "the discretionary authority . . . to determine reliability in light of the facts and circumstances in a particular case." *Kumho Tire Co.*, 526 U.S. at 158.

An expert's testimony is admissible when it provides "something more than what is obvious to the layperson in order to be of any particular assistance to the jury." *Dhillion v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001). In addition, "[a]n expert must substantiate his opinion; providing only an ultimate conclusion with no analysis is meaningless." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 743 (7th Cir. 2007) (internal quotations omitted). Similarly, opinion evidence may be unreliable and worthy of exclusion if a court concludes "that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Stated another way, an expert opinion that only consists of "subjective belief or unsupported speculation" should be excluded. *Deimer v. Cincinnati Sub-Zero Prod., Inc.*, 58 F.3d 341, 344 (7th Cir. 1995) (quoting *Daubert,* 509 U.S. at 590).

However, exclusion of expert testimony should be the exception, not the rule. *See Advisory Committee Notes to Rule 702*. The jury must still be allowed to play its essential role as the arbiter of the weight and credibility of testimony. *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013). The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis

remain factual matters to be determined by the jury. *Id.*; *see also Lees v. Carthage Coll.*, 714 F.3d 516, 525 (7th Cir. 2013)

B. Reliability of Dr. Chiodo's Opinions

Guthrie does not challenge Dr. Chiodo's qualifications as a biomedical engineer or a physician. Similarly, Guthrie does not challenge Dr. Chiodo's additional expertise arising from his board certification in occupational medicine, which requires specialized training in causation of injuries and diseases, his advanced training in accident reconstruction, and his experience lecturing on low-speed traffic accidents and resulting injuries. Yet Guthrie does challenge the reliability and helpfulness of Dr. Chiodo's opinion that the August 2014 collision did not cause Guthrie's herniated disc and related symptoms at issue in this case.

In reaching his overarching opinion on causation, Dr. Chiodo first reviewed the photo of Guthrie's car post-collision and calculated the G forces he experienced citing peer reviewed medical and scientific literature to support his method. Chiodo's biomechanical analysis and calculations also led him to conclude that Guthrie experienced fewer G forces in the collision than would have been generated when he entered and sat into the motor vehicle before the collision. Furthermore, Dr. Chiodo demonstrated that the disc herniation Guthrie suffered could only have occurred with force that would have also caused bony injuries to the spine that Guthrie did not manifest.

Second, Dr. Chiodo's report proceeded to an analysis of both general and specific causation based on principles and methods cited in *The Reference Manual on Scientific Evidence, 3rd Edition*. *The Reference Manual* was prepared for and is used as a resource by judges managing cases involving scientific and technical evidence by outlining principles and methods of science with citations. Dr. Chiodo cites *The Reference Manual* for the proposition that an expert's opinion on causation must be supported by reasonable explanations about the effects of exposure to forces such as those involved in the collision here.

Dr. Chiodo then advocated for his opinions about the effects of the collision on Guthrie over the causation opinions of Guthrie's treating physicians alleging that they lacked necessary scientific explanation. In particular, Dr. Chiodo questioned the treating physicians' opinions claiming they failed to eliminate all possible causes of Guthrie's symptoms, besides the collision—a process call differential diagnosis validated in *The Reference Manual*. Dr. Chiodo then concluded that the treating physicians' opinions reflected the *post hoc ergo propter hoc* fallacy because they were based only on the temporal relationship between the collision and Guthrie's symptoms and nothing more.

Through the instant motion, Guthrie argues that

(1) Dr. Chiodo's opinions constitute legal conclusions that will not be helpful to the trier of fact;

(2) insufficient information forms the basis of Dr. Chiodo's causation opinion;

(3) Dr. Chiodo did not employ reliable principles and methods in arriving at his conclusions; and

(4) Dr. Chiodo did not reliably apply biomechanical engineering principles and methods to this case.

Guthrie rejects as unreliable Dr. Chiodo's biomechanical analysis and calculations arguing that he failed to consider all the relevant evidence available to analyze the forces resulting from the collision and their effect on Guthrie. In particular, Guthrie challenges Dr. Chiodo's contention that looking at a photograph of one car involved in a rear-end collision is the best evidence for determining the speed at impact—that review of Guthrie's deposition testimony about his experience and pain before and after the collision, repair estimates for the vehicle, the type of bumper involved, and any damage under the vehicle is not required. Yet, Dr. Chiodo cites an article in the European Spine Journal, which is devoted to spine surgery and related disciplines including but not limited to biomechanics and pathophysiology, to support his application of this method. [DE 31-1 at 4 (citing Castro WH, *et al.*, *Do "whiplash injuries" occur in low-speed rear impacts?* EUR. SPINE J. (1997) 6:366-375)]; *see also* European Spine Journal, https://www.europeanspinejournal.org/about. Guthrie has not presented evidence to discredit this publication or Castro's article. Thus, Guthrie has not demonstrated that Dr. Chiodo's method is not reliable.

Similarly, Guthrie rejects as unreliable Dr. Chiodo's opinion that treating physicians should conduct differential diagnosis to eliminate causes of a patient's symptoms before opining about the causation of the symptoms. Dr. Chiodo ultimately opined that Guthrie's treating physicians fell prey to the *post hoc ergo propter hoc* fallacy when they relied solely on the temporal relationship between the collision and Guthrie's symptoms rather than taking the additional step of eliminating other potential causes of those symptoms. Guthrie argues that Dr. Chiodo's only foundation for this approach to causation analysis is *The Reference Manual*, which is not a source reasonably relied upon by biomedical engineers under Fed. R. Evid. 703. Moreover, Guthrie argues that Dr. Chiodo's interpretation of *The Reference Manual* is a legal conclusion to which experts cannot testify. *See United States v. Sinclair*, 74 F.3d 753, 757 n. 1 (7th Cir. 1996); *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994).

These arguments are not compelling either. While *The Reference Manual* may not be a source on every biomedical engineer's bookshelf, it would reasonably appear on a forensic expert's bookshelf. Moreover, the process of differential diagnosis is an application of logic that would be evident to any trier of fact. Thus, Dr. Chiodo's citation merely documents what is common knowledge before he evaluated the opinions about causation from the medical records presented him for analysis.

11

In the end, the instant motion reflects Guthrie's dissatisfaction with Dr. Chiodo's opinions on whether the collision caused his symptoms and injuries. His arguments go to the weight to be given to Dr. Chiodo's opinion testimony rather than its admissibility. *See Stollings*, 725 F3d. 765. Therefore, Guthrie has not persuaded the Court that Dr. Chiodo's opinions are unreliable such that they should be withheld from the trier of fact who will be charged with discerning the credibility of Dr. Chiodo's opinion testimony. Moreover, Dr. Chiodo's knowledge will help the trier of fact understand the effect of the collision on Guthrie, a key fact in this case. Accordingly, Dr. Chiodo should be allowed to testify.

In the final analysis, Guthrie's objections challenge the weight to be given to Dr. Chiodo's opinion, rather than its admissibility. Guthrie will have an opportunity to challenge the weight of Dr. Chiodo's opinion in the crucible of cross-examination at trial, which will give the jury an opportunity to afford this evidence its proper weight. Nothing in the record demonstrates that this evidence is improper, prejudicial, or otherwise inadmissible; rather, the record demonstrates it could be helpful to the jury. In performing its role as gatekeeper, this Court finds that the evidentiary gate should be opened so that the jury can consider Dr. Chiodo's testimony in light of other evidence in making its determination of causation, liability, and damages.

## III. CONCLUSION

Having determined that Dr. Chiodo retains the scientific knowledge to help the jury decide the critical question of causation, that Dr. Chiodo's opinions are based on sufficient facts or data, and that he applied reliable principles and methods in reaching those opinions as required under Fed. R. Evid. 702, the Court **DENIES** Guthrie's instant motion to exclude. [DE 30].

**SO ORDERED.**

Dated this 14th day of May 2018.

s/Michael G. Gotsch, Sr.  
Michael G. Gotsch, Sr.  
United States Magistrate Judge